THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRIAN E. ERNST, Defendant-Appellee.

Second District   No. 2—98—1489

Opinion filed February 16, 2000.

Gary W. Pack, State's Attorney, of Woodstock (Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and David A. Hibben, of Chicago, for the People.

James A. Campion and R. Mark Gummerson, both of Campion, Curran, Rausch, Gummerson & Dunlop, P.C., of Crystal Lake, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The State appeals the November 5, 1998, order of the circuit court of McHenry County granting defendant Brian Ernst's motion to suppress evidence and quash arrest. The defendant had been arrested and charged with driving a vehicle while his blood-alcohol concentration was .08 or more (625 ILCS 5/11—501(a)(1) (West 1998)). The trial court ruled that the defendant's emergency health care providers had improperly reported the defendant's blood-alcohol test results to the arresting officer in violation of the physician-patient privilege (735 ILCS 5/8—802 (West 1998)). We reverse and remand the cause for trial.

On January 31, 1998, the defendant was charged by complaint with driving a vehicle while his blood-alcohol concentration was .08 or more (625 ILCS 5/11—501(a)(1) (West 1998)). On March 23, 1998, the defendant filed a motion to quash arrest and suppress evidence. In his motion, the defendant argued that the arresting officer had no probable cause to believe that he had committed an offense.

On May 8, 1998, the trial court held a hearing on the defendant's motion to quash arrest and suppress evidence. At the hearing, the defendant called Deputy William Henninger of the McHenry County sheriff's police. Deputy Henninger testified that, on January 31, 1998, at approximately 2:45 a.m., he received a call regarding a one-vehicle accident. When he arrived at the scene, he observed a Chevrolet Camaro off to the side of the road and against a tree. Lieutenant Tom Monday, who had already arrived on the scene, told him that the Camaro belonged to the defendant. Deputy Henninger observed that the defendant had facial and scalp injuries that were bleeding. An ambulance was called, and Deputy Henninger had the defendant sit in the front seat of the squad car to wait while Deputy Henninger completed an accident report. In response to Deputy Henninger's questioning about the accident, the defendant explained that he had driven around a curb too fast and could not control the car.

Deputy Henninger testified that the defendant was in the squad car for four to five minutes. During this time, the defendant's speech was clear and coherent. Although the defendant's eyes were bloodshot and glassy, Deputy Henninger attributed this condition to the defendant's head injuries. The defendant did not smell of alcohol.

Deputy Henninger testified that the defendant was then taken by ambulance to Woodstock Memorial Medical Center. At the hospital, Deputy Henninger continued to work on his report while the defendant was behind a curtain in a treatment room. After completing the report, he gave the defendant a copy, obtained the telephone number of the defendant's parents, called them, and then advised the defendant that his parents were on their way.

Deputy Henninger testified that, later during the morning of January 31, 1998, he was advised that the hospital had called the police station and that the results of the defendant's blood-alcohol screening were available. Deputy Henninger and Lieutenant Monday returned to the hospital and received a report in an envelope from nurse Kathy Harrison. The officers were unable to decipher the results of the report, and Harrison told them that the defendant's blood-alcohol level was .254. Although Deputy Henninger did not believe that the defendant was intoxicated at the time of his accident, Lieutenant Monday directed him to arrest the defendant because the reading was over .08.

After the defendant indicated that he had no further evidence to introduce on his motion to quash arrest and suppress evidence, the State moved for a directed finding. The trial court granted the State's motion, finding that the blood-alcohol test results provided sufficient probable cause to support the arrest of the defendant.

On June 5, 1998, the defendant filed a motion to reconsider the trial court's ruling. In reliance upon *Village of Arlington Heights v. Bartelt*, 211 Ill. App. 3d 747, 750 (1991), the defendant argued that it was improper for the trial court to utilize blood-alcohol test results in determining whether the officers had probable cause to arrest. In *Bartelt*, the court held that, although blood-alcohol tests may be admitted at trial pursuant to section 11—501.4 of the Illinois Vehicle Code (the Code) (625 ILCS 5/11—501.4 (West 1998)), there was no specific authority permitting the use of oral statements made by medical personnel to establish probable cause. *Bartelt*, 211 Ill. App. 3d at 750. The defendant argued that the results of the blood tests performed on January 31, 1998, were protected under the physician-patient privilege (735 ILCS 5/8—802 (West 1998)) and that the officers needed some other independent basis to establish probable cause.

In response to the motion to reconsider, the State argued that section 11—501.4—1 of the Code (625 ILCS 5/11—501.4—1 (West 1998)) permitted the use of blood-alcohol test results to establish probable cause for arrest. The State argued that section 11—501.4—1 specifically authorized medical personnel to report the results of blood tests to the Department of State Police or local law enforcement agencies. 625 ILCS 5/11—501.4—1 (West 1998). The State argued that *Bartelt* was not applicable to the instant case because section 11—501.4—1 was enacted after that case was decided.

On August 25, 1998, following a hearing, the trial court granted the defendant's motion to reconsider and denied the State's motion for a directed finding. The trial court found that, although section 11—501.4—1 allowed the admission of blood-alcohol test results at

trial, it did not permit the use of such evidence in probable cause hearings. The trial court therefore ruled that the enactment of section 11—501.4—1 had not overruled *Bartelt* and that the physician-patient privilege did not permit *ex parte* disclosures of blood-alcohol test results by medical personnel to the police. Rather, the trial court ruled that such evidence could only be used in prosecutions and only after such evidence had been disclosed pursuant to judicially authorized methods of discovery. See *Bartelt*, 211 Ill. App. 3d at 750.

On November 5, 1998, the trial court resumed the hearing on the defendant's motion to quash arrest and suppress evidence. The State presented the testimony of Kathleen Harrison, the registered nurse assigned to the emergency room on January 31, 1998. Harrison testified that she provided Deputy Henninger and Lieutenant Monday a copy of the defendant's blood-alcohol test results. When the State asked Harrison to explain the contents of the report, the trial court sustained the defendant's objection on the basis of the physician-patient privilege.

At the close of the hearing, the trial court granted the defendant's motion to quash arrest and suppress evidence. The trial court found that, although the State had shown sufficient probable cause to arrest the defendant, the defendant's blood-alcohol test results had been improperly obtained as a result of an *ex parte* disclosure. The trial court ruled that this was a violation of the principles articulated in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986). The State filed a timely notice of appeal.

On appeal, the State argues that nurse Harrison's disclosure of the defendant's blood-alcohol test results was expressly permitted by section 11—501.4—1 of the Code and was not a violation of the physician-patient privilege. The State argues that medical personnel may report blood test results to law enforcement officers without prior court authorization and that the results can be used to establish probable cause for an arrest.

■ A trial court's ruling on a motion to quash arrest and suppress evidence is generally subject to reversal on appeal only if it is manifestly erroneous. *People v. Carlson*, 185 Ill. 2d 546, 551 (1999). The trial court's determination regarding factual matters, including the reasonable inferences to be drawn from the witnesses' testimony, is entitled to deference by a reviewing court. *People v. Safunwa*, 299 Ill. App. 3d 707, 710-11 (1998). However, where only a question of law is involved, the circuit court's ruling is subject to *de novo* review. *People v. Wright*, 183 Ill. 2d 16, 21 (1998). In this case, the issue raised is a question of law, and our review is therefore *de novo*. *Carlson*, 185 Ill. 2d at 551.

■ Section 11—504.4—1 of the Code relates to the reporting of blood test results performed in the regular course of providing emergency medical treatment. That section provides, in relevant part, as follows:

"(a) Notwithstanding any other provision of law, the results of blood or urine tests performed for the purpose of determining the content of alcohol *** in an individual's blood or urine conducted upon persons receiving medical treatment in a hospital emergency room for injuries resulting from a motor vehicle accident may be reported to the Department of State Police or local law enforcement agencies. Such blood or urine tests are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961.

(b) The confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to tests performed upon an individual's blood or urine under the provisions of subsection (a) of this Section." 625 ILCS 5/11—501.4—1 (West 1998).

Our research has revealed no previous decision interpreting this statutory language. In interpreting the meaning of a statute, our primary concern is to ascertain and give effect to the true intent of the legislature. *People v. Hickman*, 163 Ill. 2d 250, 261 (1994). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). Where the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law. *Kunkel v. Walton*, 179 Ill. 2d 519, 533-34 (1997). Where statutory language is ambiguous, it is appropriate to examine the legislative history. *Hickman*, 163 Ill. 2d at 261. However, when the language is clear, it will be given effect without resort to other aids for construction. *Hickman*, 163 Ill. 2d at 261.

Here, the language of the statute at issue is clear and unequivocal. Subsection (a) of section 11—501.4—1 plainly provides that the results of blood-alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room for injuries resulting from a motor vehicle accident may be reported to local law enforcement agencies. Subsection (b) additionally provides that the confidentiality provisions of the law shall not apply with regard to such blood-alcohol tests. These provisions therefore permit the direct disclosure of blood-alcohol test results by medical personnel to law enforcement agencies under the narrow circumstances delineated in subsection (a). Such a

disclosure may be made without violating any statutory physician-patient privilege.

Additionally, section 11—501.4—1 contains no limitation that blood-alcohol test results only be disclosed pursuant to judicially authorized methods of court discovery. We believe that to impose such a requirement would be contrary to the purpose of the statute as evidenced by its plain language. The statute authorizes the reporting of blood-alcohol test results to law enforcement authorities. A common definition of the word "report" is "to make known to the authorities." Merriam-Webster Dictionary 625 (5th ed. 1997). By using the word "report," we believe that the legislature intended medical personnel to initially alert police of the presence of alcohol in the blood of individuals receiving emergency treatment from motor vehicle accidents, even in instances where the police might not otherwise suspect the use of alcohol. Requiring the police to obtain such information through judicially authorized methods of discovery would defeat the primary reporting function created by the statute.

Moreover, as already noted, the legislature has specifically provided that the physician-patient confidentiality requirements are inapplicable with regard to the reporting of blood-alcohol test results. 625 ILCS 5/11—501.4—1(b) (West 1998). The source of the physician-patient privilege is statutory and the scope of that privilege is generally a matter for the legislature. See *Kunkel*, 179 Ill. 2d at 533; *People ex rel. Birkett v. City of Chicago*, 292 Ill. App. 3d 745, 750 (1997); *Parkson v. Central Du Page Hospital*, 105 Ill. App. 3d 850, 852 (1982). Here, the legislature has chosen to limit the scope of the statutory privilege such that, under the narrow circumstances delineated in the statute, medical personnel may communicate directly with the police. On appeal, the defendant does not argue that such a limitation is unconstitutional. Accordingly, we believe that the trial court erred in relying upon *Petrillo* to find that the prohibition against *ex parte* communication was applicable in the instant case.

As the defendant correctly notes, other Illinois courts have held that a defendant's blood-alcohol test results can only be disclosed pursuant to judicially authorized authority. See *People v. Wilber*, 279 Ill. App. 3d 462, 465 (1996); *Bartelt*, 211 Ill. App. 3d at 750. However, these cases were decided prior to the enactment of section 11—501.4—1 in 1997. Although blood-alcohol test results were admissible into evidence in prosecutions prior to the enactment of section 11—501.4—1 (see 625 ILCS 5/11—501.4 (West 1998)), there was no statutory provision permitting the direct reporting of blood-alcohol test results to police. We therefore believe that the trial court erred in applying these authorities to the instant case. Rather, for the reasons

detailed above, we believe that the plain language of section 11—501.4—1 permits the disclosure of blood-alcohol test results without court order.

We also agree with the State that blood-alcohol test results reported pursuant to the statute may be used in formulating probable cause to arrest. We believe that, by permitting these results to be reported to the police in the first instance, the legislature intended that the police would utilize these results in determining whether to effectuate an arrest. A prohibition against the use of blood-alcohol test results at a probable cause hearing would therefore undermine a primary purpose of the statute. In construing a statute, a court should not apply an interpretation that would produce results that the legislature could not have intended. *People v. Steppan*, 105 Ill. 2d 310, 316 (1985).

The defendant objects to such an interpretation, relying on that portion of section 11—501.4—1 that provides that blood-alcohol test results "are admissible in evidence as a business record exception to the hearsay rule *only in prosecutions* for any violation of Section 11—501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961." (Emphasis added.) 625 ILCS 5/11—501.4—1(a) (West 1998). The defendant argues that this language limits the admissibility of such evidence to trial and does not authorize its use during probable cause hearings. We disagree.

The defendant misinterprets the phrase "only in prosecutions." When the phrase is read with the remainder of the sentence, it becomes clear that the phrase was intended to limit the types of cases in which blood test results could be admitted. In other words, the statute provides that such evidence may only be admitted in prosecutions for violations of section 11—501 of the Code or similar provision of a local ordinance, or in prosecutions for reckless homicide. Therefore, the statute limits the use of such evidence according to the nature of the offense, as opposed to the nature of the hearing. We therefore hold that blood-alcohol test results reported pursuant to section 11—501.4—1 may be utilized during probable cause hearings.

■ In so holding, we acknowledge that our conclusion is contrary to that reached in *Bartelt*. As noted above, in *Bartelt*, the reviewing court held that, absent specific statutory authority, oral statements by medical personnel could not be used for the purpose of establishing probable cause. *Bartelt*, 211 Ill. App. 3d at 750. However, *Bartelt* was decided prior to the enactment of section 11—501.4—1. As medical personnel are now permitted to report blood-alcohol test results directly to the police pursuant to section 11—501.4—1, we find no rea-

son to prevent the State from utilizing the information as a basis to find probable cause. We therefore decline to apply *Bartelt* to the instant case and instead hold that, under the narrow circumstances delineated in section 11—501.4—1, blood-alcohol test results may be used in establishing probable cause.

In closing, we note that there was sufficient evidence introduced at the hearing demonstrating that the police had sufficient probable cause to arrest the defendant. The blood test results demonstrated that the defendant had a blood-alcohol level over .08. On the night in question, the defendant lost control of his vehicle, drove off the road, and hit a tree. Additionally, Deputy Henninger noted that the defendant's eyes were bloodshot and glassy. We believe that, under the totality of the circumstances, there was sufficient probable cause to arrest the defendant for driving a vehicle while his blood-alcohol concentration was .08 or more.

Accordingly, we reverse the trial court's order quashing the defendant's arrest and suppressing the evidence and remand this cause for trial.

For the foregoing reasons, the judgment of the circuit court of McHenry County is reversed, and the cause is remanded.

Reversed and remanded.

INGLIS and THOMAS, JJ., concur.