# Illinois Official Reports

## Appellate Court

<div style="border:1px solid;">

### *People v. Quigley*, 2018 IL App (1st) 172560

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN QUIGLEY, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-17-2560 |
| Filed<br>Rehearing denied | November 30, 2018<br>January 11, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 39212590; the Hon. Patrick T. Stanton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Franklin A. Celani, of Mokena, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, and Paul Sloan, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Justices Hoffman and Lampkin concurred in the judgment and opinion. |

¶ 1    Defendant-appellant, Kevin Quigley, appeals from the denial of his petition to rescind the statutory summary suspension of his driver's license. On appeal, defendant argues that the trial court erred when, at the hearing on his petition, it allowed the admission of the results of his blood alcohol test performed at a hospital emergency room during treatment following a motor vehicle accident in contravention of the physician-patient privilege. Defendant further contends that, absent the test results, there were no reasonable grounds upon which to conclude he was driving while under the influence of alcohol and that, therefore, his petition to rescind should have been granted. For the reasons that follow, we affirm.[1]

¶ 2    On November 5, 2016, defendant was involved in a multicar collision and was transported from the scene by ambulance to a hospital emergency room. At the hospital, a blood alcohol test was performed on defendant, and a doctor informed an Illinois state trooper of the results. The trooper placed defendant under arrest and issued him citations for driving under the influence of alcohol in violation of section 11-501(a)(2) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2) (West 2016)) and other traffic violations. In addition, defendant was subsequently charged with driving while his blood alcohol level was 0.08 or greater under section 11-501(a)(1) of the Code. *Id.* § 11-501(a)(1). Defendant's driver's license was, thereafter, summarily suspended by the Secretary of State until December 2019.

¶ 3    On December 1, 2016, defendant filed a petition to rescind the statutory summary suspension. Defendant asserted that rescission was warranted on four grounds including that the arresting officer did not have reasonable grounds to believe he was driving or in actual physical control of a motor vehicle while under the influence of alcohol. The circuit court, on May 15, 2017, held a hearing on the petition.

¶ 4    At the hearing, defendant called Thomas Krzysiak, an Illinois state trooper who testified that, on November 5, 2016, at 4:02 a.m., he was dispatched to the southbound lanes of Interstate 94 at 65th Street in Chicago. At that location, the roadway consisted of four lanes of traffic, with the two left lanes going up a ramp to the Chicago Skyway (Skyway), and the two right lanes continuing onto the local lanes of the Dan Ryan Expressway. When Trooper Krzysiak arrived on the scene, three vehicles appeared to have been involved in a collision. He referred to these vehicles as "Unit 1," "Unit 2," and "Unit 3."

¶ 5    Unit 1 was against the concrete median barrier separating the local lanes of traffic from the Skyway ramp and its front end was severely damaged. Defendant, the sole occupant of Unit 1, was bleeding from lacerations on his forehead and face. Trooper Krzysiak asked defendant what had happened and if he was all right. Defendant gave the trooper his name and driver's license but stated that he "wasn't involved in any crash." When fire department personnel asked defendant to exit his vehicle, defendant refused, stating that he was uninjured.

¶ 6    Unit 2 was stopped in a local lane. The occupants stated that Unit 1 had passed them on the left in the exit ramp toward the Skyway. Thereafter, Unit 1 suddenly attempted to cross from the ramp to the local lanes, lost control, struck the barrier that separates the exit ramp from the local lanes, went airborne, and then struck their vehicle. Unit 3 was on the grassy embankment

<hr />

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

off the right shoulder. The driver of Unit 3 gave Trooper Krzysiak a similar account of Unit 1's travels—that it was moving in the left lane onto the Skyway, cut across, struck the concrete barrier, went airborne, and then struck Unit 2. The driver of Unit 3 added that Unit 2 then struck his vehicle, which caused him to lose control and his vehicle ended up in the embankment. Finally, Trooper Krzysiak interviewed a witness who was not involved in the collision, who told him essentially the "same thing."

¶ 7    Eventually, defendant was taken by ambulance to the emergency room of Stroger Hospital. Trooper Krzysiak later spoke with defendant in a hospital room, and at some point, he placed defendant under arrest.

¶ 8    On cross-examination by the State, Trooper Krzysiak testified that, prior to November 5, 2016, he had participated in over 100 driving under the influence (DUI) investigations and, additionally, had interacted with people under the influence of alcohol hundreds of times. He then provided more detail about his investigation and interactions with defendant.

¶ 9    Specifically, when Trooper Krzysiak first spoke with defendant, defendant stated that he was not involved in any crash, that he was fine, and that he just wanted to leave. The engine of defendant's vehicle was still running at this time. After Trooper Krzysiak spoke with other witnesses, he returned to defendant's vehicle and talked to him a second time. During both interactions, Trooper Krzysiak noticed that a "strong odor of alcoholic beverage was emanating from his breath." As such, during their second conversation, Trooper Krzysiak asked defendant if he had been drinking alcohol, and defendant did not answer. Trooper Krzysiak asked him again what had happened in the crash and defendant replied: "What crash? I wasn't involved in any crash. I didn't hit anybody."

¶ 10    At this point, fire department personnel joined Trooper Krzysiak in assisting defendant out of his vehicle and onto a gurney. Defendant repeatedly refused to leave his vehicle and said that he did not want to go to the hospital but wanted to call his parents and go home. Eventually, defendant was moved into an ambulance and transported to the hospital. After defendant received treatment, Trooper Krzysiak spoke with defendant in his hospital room. Again, Trooper Krzysiak smelled "a strong odor of alcoholic beverage emanating from his breath." While in the hospital room, Trooper Krzysiak placed defendant into custody.

¶ 11    When the State asked if, prior to placing defendant into custody, Trooper Krzysiak had a conversation with anyone who was treating defendant at the hospital, defense counsel objected on the grounds of physician-patient privilege. The trial court overruled the objection. Thereafter, Trooper Krzysiak testified that a physician, Dr. Joseph, told him that lab work had been done, the results of which indicated defendant's whole blood alcohol content was 0.297. According to Trooper Krzysiak, that number converted to a serum blood alcohol content of 0.251, which was over the legal limit of 0.08. Trooper Krzysiak confirmed that the police had not directed anyone at the hospital to take defendant's blood. After receiving this information, Trooper Krzysiak placed defendant under arrest and read defendant the warnings to motorist.[2]

¶ 12    Trooper Krzysiak explained that he did not offer defendant standard field sobriety tests on the scene because, due to defendant's injuries, it would not have been feasible to conduct the

---

[2]According to the trooper's sworn report, and the confirmation from the office of the Secretary of State, defendant's statutory summary suspension was based upon defendant's subsequent refusal or failure to submit to a blood alcohol test.

tests. He stated that he eventually formed an opinion that defendant was under the influence of alcohol based upon the strong odor of alcohol, the crash, and the blood alcohol test results.

¶ 13 On redirect, defense counsel asked Trooper Krzysiak whether he would have placed defendant under arrest had it not been for Dr. Joseph's disclosure. Trooper Krzysiak answered: "I don't know."

¶ 14 After defendant rested, the State made a motion for a directed finding, which was granted. As is relevant here, the court found that the arresting officer had reasonable grounds to believe both that defendant had been driving and that he was under the influence of alcohol. The court specified that the circumstances supporting a belief that defendant was under the influence of alcohol included the "extremely violent accident that [defendant was] swerving from [the] left-hand lane to the right-hand lane going over a median, flipping the car"; defendant's denial that he had been in an accident; the odor of alcohol on defendant's breath; and the results of the blood alcohol test.

¶ 15 After the court announced its decision, defense counsel challenged the court with regard to its consideration of the blood alcohol test results. The court responded, in relevant part, as follows:

"And I think it's appropriate for [Trooper Krzysiak] to consider what was reported to him as blood alcohol content. Whether accurate or not, this is what was reported to him. Now it was appropriate for him to consider it. And given that—and frankly, without the blood alcohol test, I think there could arguably be sufficient grounds for [DUI].

The odor of alcohol, the type of accident that occurred, his disorientation regarding what happened, where he was, was he even in an accident. Well, one can even argue that it might have been from an injury. [One] can easily argue it's from impairment."

¶ 16 Defendant, thereafter, filed a posthearing motion, arguing (1) that the trial court erred in allowing the results of his hospital blood alcohol test results into evidence over his objection where those results were protected by the physician-patient privilege and (2) that, absent the blood alcohol test results, he had established a *prima facie* showing that there were no reasonable grounds for his arrest.

¶ 17 Following a hearing, the trial court denied the motion. In doing so, the court stressed that the blood alcohol test results had not been entered into evidence but, rather, Trooper Krzysiak had testified that he had considered those results in determining whether he had reasonable grounds to believe that defendant was driving while impaired. The court found that Dr. Joseph was expressly authorized by statute to disclose the blood alcohol test results to Trooper Krzysiak and that, therefore, there had been no violation of the physician-patient privilege and that the blood alcohol test results were properly considered by Trooper Krzysiak in his decision to place defendant under arrest for DUI. Defendant appealed.

¶ 18 On appeal, defendant first contends that the trial court erred when it allowed "into evidence," over his objection, the results of the blood alcohol test conducted at the hospital. He argues that those test results were protected by the physician-patient privilege and that no exception to that privilege applies in proceedings to rescind a statutory summary suspension. Specifically, he asserts that exceptions allowing for the admission into evidence of blood alcohol test results "in prosecutions" for certain offenses do not apply here because statutory summary suspension hearings are civil actions and not criminal prosecutions.

¶ 19    The Code includes an "implied consent" provision. Section 11-501.1 of the Code states:

"Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of [s]ection 11-501.2, to a chemical test or tests of blood, breath, other bodily substance, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds or any combination thereof in the person's blood if arrested *** for any offense as defined in [s]ection 11-501 or a similar provision of a local ordinance ***." 625 ILCS 5/11-501.1(a) (West 2016).

This section also authorizes the Illinois Secretary of State "to summarily suspend the driver's license of any motorist arrested for [driving under the influence] who refuses to submit to chemical testing, tests above the legal alcohol concentration limit, or tests positive for an intoxicating substance." *People v. Elliot*, 2014 IL 115308, ¶ 16 (citing 625 ILCS 5/11-501.1(d) (West 2002)). The suspension has the purpose of promptly removing impaired drivers from the roadways and protects the public. *Id.*

¶ 20    A defendant who has received a notice of a statutory summary suspension of driving privileges may request a judicial hearing, stating the grounds upon which he seeks rescission of the suspension. 625 ILCS 5/2-118.1(b) (West 2016). A specific ground that may be pled is "[w]hether the officer had reasonable grounds to believe that the person was driving *** while under the influence of alcohol." *Id.* A hearing on a petition to rescind "shall proceed in the court in the same manner as in other civil proceedings." *Id.*

¶ 21    At a hearing on a petition to rescind, the defendant has the burden of establishing a *prima facie* case for rescission. *People v. Fonner*, 385 Ill. App. 3d 531, 539 (2008). If a *prima facie* case is established, the burden shifts to the State to present evidence justifying the suspension. *Id.* However, if the defendant fails to establish a *prima facie* case, a directed finding should be granted for the State. *People v. Helt*, 384 Ill. App. 3d 285, 287 (2008). A trial court's finding regarding whether a defendant has established a *prima facie* case for rescission of the statutory summary suspension will not be reversed on appeal unless it is against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence only if it is unreasonable, arbitrary, or not based on the evidence presented, or if the opposite conclusion is clearly evident. *Fonner*, 385 Ill. App. 3d at 539.

¶ 22    In response to defendant's position that the physician-patient privilege protected the results of his blood alcohol test, the State maintains that exceptions to the physician-patient privilege, found in sections 8-802(4) and (9) of the Code of Civil Procedure (735 ILCS 5/8-802(4),[3] (9) (West 2016)), and sections 11-501.4 and 11-501.4-1 of the Code allowed the disclosure of defendant's blood alcohol test results and the testimony relating to the test. The question of whether an evidentiary privilege or an exception to that privilege applies is reviewed *de novo*. *People v. Botsis*, 388 Ill. App. 3d 422, 434 (2009).

¶ 23    Communications between a physician and patient were not protected from disclosure under common law. *Parkson v. Central Du Page Hospital*, 105 Ill. App. 3d 850, 852 (1982).

---

[3]We do not address section 8-802(4), which states that disclosure is permitted "in all actions brought by or against the patient, his or her personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his or her estate wherein the patient's physical or mental condition is an issue" (735 ILCS 5/8-802(4) (West 2016)), as we have found the blood alcohol test results were, otherwise, exempt.

Section 8-802 of the Code of Civil Procedure codifies the physician-patient privilege and provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802 (West 2016). The privilege, however, is not absolute. Section 8-802, itself, enumerates 14 exceptions to the physician-patient privilege and "illustrates a 'legislative balancing between relationships that society feels should be fostered through the shield of confidentiality and the interests served by disclosure of the information.' " *Palm v. Holocker*, 2017 IL App (3d) 170087, ¶ 21 (quoting *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 575-76 (2002)).

¶ 24    Section 8-802(9) provides an exemption to the physician-patient privilege "in prosecutions where written results of blood alcohol tests are admissible pursuant to [s]ection 11-501.4 of the [Code]." 735 ILCS 5/8-802(9) (West 2016). Section 11-501.4 of the Code, to which section 8-802(9) of the Code of Civil Procedure refers, provides that " '[t]he confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable' " with regard to blood tests performed when receiving medical treatment in an emergency room and (under certain criteria) are admissible in the prosecution for any violation of section 11-501, a similar local ordinance, or for reckless homicide. *People v. Ogle*, 313 Ill. App. 3d 813, 816 (2000) (quoting 625 ILCS 5/11-501.4(b) (West 1998)).

¶ 25    Additionally, section 11-501.4-1 of the Code provides an exemption with regard to individuals being treated in an emergency room after a motor vehicle accident and states:

> "(a) *Notwithstanding any other provision of law*, the results of blood, other bodily substance, or urine tests performed for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, in an individual's blood, other bodily substance, or urine conducted upon persons receiving medical treatment in a hospital emergency room for injuries resulting from a motor vehicle accident shall be disclosed to the Department of State Police or local law enforcement agencies of jurisdiction, upon request. Such blood, other bodily substance, or urine tests are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of [s]ection 11-501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961 or the Criminal Code of 2012.
>
> (b) The confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to tests performed upon an individual's blood, other bodily substance, or urine under the provisions of subsection (a) of this [s]ection." (Emphasis added.) 625 ILCS 5/11-501.4-1(a), (b) (West 2016).

¶ 26    Here, a blood alcohol test was performed on defendant when he was being treated in an emergency room for injuries he sustained after a motor vehicle accident. Thus, under section 11-501.4-1 of the Code, the physician-patient privilege did not prevent disclosure of the blood alcohol test results to law enforcement. In fact, this section required that the results of defendant's blood alcohol test be given to Trooper Krzysiak upon his request. There is no question that Dr. Joseph acted properly in providing Trooper Krzysiak with defendant's blood alcohol test results. The circuit court properly found the physician-patient privilege was not violated by the physician's reporting of defendant's blood alcohol test results.

¶ 27    The question then becomes whether, in the context of the statutory summary suspension proceeding, it was proper for Trooper Krzysiak and the trial court to consider those test results in determining whether reasonable grounds existed to believe defendant had been under the influence of alcohol while he was driving. No published case in Illinois has addressed this exact question. However, in *People v. Ernst*, 311 Ill. App. 3d 672, 678 (2000), this court addressed the analogous question of whether, in the context of a motion to quash arrest and suppress evidence, it is proper to consider such results in determining whether probable cause to arrest for driving while impaired existed.

¶ 28    In *Ernst*, the defendant had been arrested and charged with driving under the influence of alcohol. *Id.* at 673. The trial court granted his motion to quash arrest and suppress evidence, ruling that an emergency room nurse had improperly reported his blood alcohol test results to the arresting officer in violation of the physician-patient privilege. *Id.*

¶ 29    On appeal, this court determined that the plain language of section 11-501.4-1 permitted the disclosure of the test results to local law enforcement personnel without the need for judicially authorized methods of court discovery. *Id.* at 676-77. In addition, this court held that blood alcohol test results reported pursuant to section 11-501.4-1 may be used by law enforcement in formulating probable cause to arrest and be considered at a hearing relating to probable cause. *Id.* at 677-79; see also *People v. Beck*, 2017 IL App (4th) 160654, ¶ 100 (where appellate court, reviewing a motion to quash, cited section 11-501.4-1 and found "evidence of the results of the hospital blood draw would have provided [the officer] with reasonable grounds to believe defendant committed a DUI offense"). The *Ernst* court explained its holding in this way:

> "We believe that, by permitting these results to be reported to the police in the first instance, the legislature intended that the police would utilize these results in determining whether to effectuate an arrest. A prohibition against the use of blood-alcohol test results at a probable cause hearing would therefore undermine a primary purpose of the statute. In construing a statute, a court should not apply an interpretation that would produce results that the legislature could not have intended." *Ernst*, 311 Ill. App. 3d at 678 (citing *People v. Steppan*, 105 Ill. 2d 310, 316 (1985)).

¶ 30    In keeping with *Ernst* and the language of section 11-501.4-1, we find no error in Trooper Krzysiak's consideration of the results of the hospital's blood alcohol test in determining whether there were reasonable grounds to believe defendant was driving under the influence of alcohol. The trooper's conclusion served as a basis for his arrest of defendant and to the trooper giving defendant the warnings to motorist. As a result, defendant's license was subjected to a statutory summary suspension under the implied consent provision of the Code. The purpose of a statutory summary suspension, as we have stated, is to swiftly remove impaired drivers from our streets. Such a need is particularly heightened where the impaired driver has been involved in a motor vehicle collision. The legislative intent recognized in *Ernst*—that the police would use disclosed blood alcohol test results in determining whether there was probable cause to effectuate an arrest—applies just as equally in the context of a statutory summary suspension proceeding as in a probable cause hearing.

¶ 31    Our conclusion is supported by our supreme court's recognition that the issues raised in a petition to rescind and in a motion to suppress are overlapping and share the same standard of review. *People v. Wear*, 229 Ill. 2d 545, 560-61 (2008). Specifically, when determining whether an officer had reasonable grounds to arrest a defendant in the context of deciding a

petition to rescind statutory summary suspensions, Illinois courts utilize the probable cause analysis of the fourth amendment. *Id.*; see also *Fonner*, 385 Ill. App. 3d at 539-40 (in proceedings on a petition to rescind a statutory summary suspension "reasonable grounds" is synonymous with "probable cause").

¶ 32    We find that, by permitting and, in fact, requiring the release of the blood alcohol test results to law enforcement when there has been a motor vehicle collision, it is reasonable to conclude that the legislature, in enacting section 11-501.4-1, intended that the blood alcohol test results would be used by law enforcement to determine reasonable grounds to believe a defendant has been driving impaired for purposes of a statutory summary suspension.

¶ 33    We also find that the trial court properly allowed and considered the testimony of Trooper Krzysiak as to the blood alcohol test results in its decision to deny the petition to rescind. The trooper testified that the results were a factor in his determination that there were reasonable grounds to arrest defendant for driving under the influence. In so finding, we reject defendant's argument that, because statutory summary suspension proceedings are considered as civil in nature and are not "prosecutions," the reasoning of *Ernst* should not apply here. Defendant points out that sections 11-501.4 and 11-501.4-1(a) allow blood alcohol test and similar test results into evidence as business record exceptions to the hearsay rule "in prosecutions" for certain offenses. 625 ILCS 5/11-501.4, 11-501.4-1(a) (West 2016). However, the trial court remarked at the hearing that the State did not seek the actual admission of defendant's blood alcohol test results as substantive evidence under the business record exception to the hearsay rule. Rather, the trooper merely testified to his knowledge of the blood alcohol test results as one piece of background information that, in combination with other factors, led him to effectuate an arrest of defendant for driving under the influence.

¶ 34    "To determine whether reasonable grounds and/or probable cause existed for a defendant's arrest, a court 'must determine whether a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.' " *Fonner*, 385 Ill. App. 3d at 540 (quoting *People v. Fortney*, 297 Ill. App. 3d 79, 87 (1998)). Under this standard, an officer must have " 'more than a mere suspicion, but [is] not require[d] *** to have evidence sufficient to convict.' " *Id.* (quoting *People v. Long*, 351 Ill. App. 3d 821, 825 (2004)). At a hearing on a petition to rescind statutory summary suspension on the ground that an officer did not have reasonable grounds to believe that defendant was driving while impaired, hearsay evidence "is permissible as it explains the information the officer possessed at the time and what he reasonably believed based upon that information." *People v. Horine*, 2017 IL App (4th) 170128, ¶ 15. Trooper Krzysiak based his conclusion, in part, upon defendant's reported blood alcohol test results and, therefore, this information is "essential" to a court's determination as to whether reasonable grounds existed that defendant was driving under the influence. See *id.* Because the test results were not admitted into evidence, we need not consider defendant's argument as to whether those results would be admissible as substantive evidence in a statutory summary suspension hearing under section 11-501.4 or section 11-501.4-1(a) of the Code.

¶ 35    Defendant's second contention on appeal is that, absent the blood alcohol test results, there were no reasonable grounds upon which to conclude that he was driving while under the influence of alcohol and that, therefore, his petition for rescission should have been granted. Having determined that the blood alcohol test results were properly considered in determining whether reasonable grounds existed, we need not address this contention.

¶ 36    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 37    Affirmed.