NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200461-U

NO. 4-20-0461

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 17, 2021
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| JUSTIN WEST, | ) | No. 20DT191 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Pablo A. Eves, |
| | ) | Judge Presiding. |

---

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justice Steigmann concurred in the judgment.
Justice Cavanagh dissented.

**ORDER**

¶ 1     *Held*:    The appellate court reversed, concluding the trial court erred by concluding the officer lacked reasonable grounds to believe defendant was under the influence of alcohol.

¶ 2         In April 2020, defendant, Justin West, was charged by traffic citation and complaint with driving under the influence of alcohol (DUI) and was served with a statutory summary suspension. Defendant filed a petition to rescind the summary suspension, alleging the arresting officer lacked reasonable grounds to believe defendant was under the influence. The trial court concluded the results of the portable breath test (PBT) were inadmissible due to inadequate foundation. The court further found the officer lacked sufficient reasonable grounds to believe defendant was under the influence of alcohol and granted defendant's petition to rescind the statutory summary suspension of his driver's license.

¶ 3        The State appeals, arguing the trial court erred by (1) excluding the results of the PBT and (2) finding there were no reasonable grounds to arrest defendant for DUI. For the following reasons, we reverse the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5        In April 2020, defendant was charged by traffic citation and complaint with DUI and was served with a statutory summary suspension. Defendant filed a petition to rescind the summary suspension, alleging the arresting officer lacked reasonable grounds to believe defendant was driving while under the influence.

¶ 6        Officer Tyler Vanwynsburg issued defendant traffic citations for DUI and driving the wrong way on a one-way street. Vanwynsburg's sworn report indicated he had reasonable grounds to believe defendant was driving under the influence based on defendant driving the wrong way down a one-way street, admitting to drinking, having red eyes, performing poorly on field sobriety tests, and taking a PBT resulting in a blood alcohol concentration (BAC) of 0.125.

¶ 7        In May 2020, a confirmation of statutory summary suspension was sent to defendant. In June 2020, defendant filed a petition to rescind the statutory summary suspension, alleging the arresting officer lacked reasonable grounds to believe defendant was driving upon a public highway while under the influence of alcohol.

¶ 8        The trial court held a hearing on the petition to rescind summary suspension on three nonconsecutive days. After defendant met his burden of proving a *prima facie* case for rescission, the court heard the following relevant evidence.

¶ 9        Vanwynsburg was in uniform and on patrol in a marked squad car near College Avenue and Mulberry Street in Normal, Illinois, at approximately 8:35 p.m. on the evening in question. Vanwynsburg saw and stopped the driver of a red pickup truck—later identified as

defendant—driving the wrong direction on a one-way street, although he immediately moved to correct his error. Vanwynsburg testified defendant otherwise obeyed traffic laws and appropriately curbed his vehicle when Vanwynsburg pulled him over. Defendant gave the officer conflicting information about where he was going and where he was coming from. Defendant appeared nervous and admitted to drinking wine 20 minutes earlier. Vanwynsburg testified defendant was polite and cooperative, did not have slurred speech, and did not smell of alcohol.

¶ 10    According to Vanwynsburg, he administered an abbreviated horizontal gaze nystagmus (HGN) test, during which Vanwynsburg noted defendant's "eyes appeared red and he had some jerking to his eyes at maximum deviation." Based on his observations, Vanwynsburg returned to his patrol car and called for backup. Vanwynsburg then had defendant perform field sobriety tests. Defendant performed the field sobriety tests on a hard surface road, lit with Vanwynsburg's flashlight, with minimal traffic.

¶ 11    Vanwynsburg was qualified to administer the field sobriety tests and testified there are six "clues" the HGN test can reveal. If at least four of the clues are present, the officer can give another field sobriety test. Vanwynsburg testified he administered the HGN test on defendant but he later noticed an error he made. On the night in question, Vanwynsburg noticed four clues: "[l]ack of smooth pursuit in both eyes and jerking and sustained nystagmus in both eyes." However, Vanwynsburg testified he took longer than prescribed while testing the lack of smooth pursuit. Vanwynsburg testified defendant displayed two clues during the HGN test, although he thought there were four clues at the time.

¶ 12    Vanwynsburg next administered the walk-and-turn test. The walk-and-turn test detects an individual's lack of motor skills and inability to concentrate. A threshold of two clues

were needed to move to another field sobriety test. Vanwynsburg noted four clues during the walk-and-turn test: "He stepped off the line multiple times. He stopped walking at one point. He made an improper turn and missed heel to toe."

¶ 13 Vanwynsburg next administered the one-leg stand test. Out of a maximum of four clues, two clues met the threshold. At the time he administered the test, Vanwynsburg noticed one clue. After reviewing the video and report of the arrest, Vanwynsburg noticed a second clue of impairment—defendant used his arms to balance.

¶ 14 Vanwynsburg again asked defendant how much he had to drink, and defendant admitted to drinking a vodka and vitamin water at approximately 11 a.m. Vanwynsburg asked defendant to take a PBT, and according to Vanwynsburg, "He said that he would fail and that he was impaired." Vanwynsburg testified he was trained to operate the PBT machine, which was a model approved for police officers to use and was issued to Vanwynsburg by the Normal Police Department. According to Vanwynsburg, the PBT was regularly tested for accuracy. The following exchange occurred:

> "Q. How often is the [PBT] machine—and how often is the
>
> [PBT] machine tested for accuracy?
>
> A. On a 90-day cycle.
>
> Q. Do the sergeants at the Normal Police Department
>
> check—sorry, test the machine for accuracy?
>
> A. It[']s assigned to one sergeant at a time but, yes.
>
> Q. Why is it assigned to one sergeant at a time?
>
> A. He's trained to do that test.

- 4 -

Q. Was the [PBT] machine that you used that night tested for accuracy prior pursuant to policy?

A. Yes.

Q. Was that PBT machine accurate on that date that you used it?

A. Yes. It was issued back to me after it had been turned in for calibration. So, yes."

Just before Vanwynsburg testified as to the result of the PBT, defense counsel objected based on foundation. Defense counsel argued the officer testified someone else calibrated the PBT machine and he assumed whoever performed the calibration did it properly. The State argued a sufficient foundation had been laid. The trial court made a preliminary ruling that there was "an insufficient basis for admission of this based on the lack of foundation." The court noted the foundation could be rectified if admission of the PBT results was important for the State. The court clarified its view of the inadequate foundation as follows:

"I did not hear any evidence or testimony regarding that the test was conducted to obtain one breath sample by completing the operation and pressure you programed into the instrument. Nor did I hear any evidence regarding what the test consisted of regarding decimal points and messages regarding whether or not there was any malfunction. Those are provisions that, perhaps, are something that we will be able to provide."

¶ 15        At the continued hearing, Vanwynsburg testified he used a PBT called an Alco-Sensor FST, which was approved for use by police officers. According to Vanwynsburg,

the PBT was tested for accuracy on a 90-day cycle and was, to his knowledge, accurate because it was provided by his sergeant. Vanwynsburg followed the prompts on the PBT machine, and defendant submitted a breath sample. Defense counsel again objected to the foundation for the PBT results. The trial court sustained the objection.

¶ 16　　　　The trial court discounted the portion of the HGN test Vanwynsburg administered incorrectly. Although there were sufficient clues on the walk-and-turn test, there was only a single clue on the one-leg stand test. The court stated, "So really one out of three areas of the standardized field sobriety tests is all that we have right now from the standardized test." The court noted that, although defendant briefly drove the wrong way down a one-way street, he quickly corrected his error and had no other problems driving, even though he had a number of opportunities to display difficulties.

¶ 17　　　　When Vanwynsburg pulled defendant over, there was no odor of alcohol, no trouble providing a driver's license and insurance, and no slurred speech. Defendant's admission to drinking wine 20 minutes earlier was enough to allow Vanwynsburg to administer field sobriety tests. However, the court disagreed with Vanwynsburg's assessment of the sobriety tests, stating, "[I]t's the conclusion after administering those tests, particularly given the HGN as discounted and was not actually a fail, and the one-leg stand also, the first time through also was not a fail, given that the walk-and-turn was the only thing that corroborated, at least in my mind, what the previous testimony or previous observations had been by the officer."

¶ 18　　　　The trial court reiterated it sustained the objection to the PBT results for lack of foundation. The court concluded defendant established the grounds for rescission by a preponderance of the evidence and the State failed to rebut those grounds. The court granted the petition to rescind the statutory summary suspension.

¶ 19         After the court granted defendant's petition to rescind statutory summary suspension, the State filed a motion to reconsider. When ruling on the State's motion to reconsider, the trial court stated its belief that the State was required to lay an adequate foundation for the PBT results. In part, the court stated, "[U]nder the Administrative Code the State failed to provide a full foundation required for admission of the PBT results, although I don't think it was by identifying the actual device. That was not the Court's concern on that, but rather the Administrative Code. I believe they did identify the device in the evidence." The court denied the State's motion to reconsider.

¶ 20         This appeal followed.

¶ 21                              II. ANALYSIS

¶ 22         On appeal, the State argues the trial court erred by (1) excluding the results of the PBT and (2) finding there were no reasonable grounds to arrest defendant for DUI. Because we find the issue of whether the officer had reasonable grounds to believe defendant was under the influence of alcohol dispositive, we address the State's second claim first.

¶ 23         "A motorist whose driving privileges have been summarily suspended may request a judicial hearing to seek rescission of the suspension." *People v. Acevedo*, 2017 IL App (3d) 150750, ¶ 10, 74 N.E.3d 95. One ground for the rescission of the suspension is that the arresting officer did not have reasonable grounds to believe the person was driving while under the influence of alcohol, drugs, or both. 625 ILCS 5/2-118.1(b)(2) (West 2020). A hearing on a petition to rescind a summary suspension is civil in nature, and the defendant bears the burden of proving a *prima facie* case for rescission. *People v. Gutierrez*, 2015 IL App (3d) 140194, ¶ 14, 38 N.E.3d 521.

¶ 24        The State argues the trial court erred by finding no reasonable grounds for arrest. Defendant argues the State has forfeited this argument by failing to raise it before the trial court and preserve it in a postjudgment motion.  Although during the hearing on the petition to rescind the State argued reasonable grounds to believe defendant was under the influence did exist, the State's motion to reconsider focused on the foundation for the PBT, as did the State's argument during the motion to reconsider.  This was consistent with the purpose of a motion to reconsider, which, in this instance, was to bring to the court's attention to any errors in the court's previous application of existing law.  *People v. Olson*, 2013 IL App (2d) 121308, ¶ 8, 992 N.E.2d 610. Even so, the motion did ask the court to reconsider the ruling granting the petition to rescind statutory suspension.  As noted by the trial court, the petition to rescind alleged the officer lacked reasonable grounds to believe defendant was under the influence.  The court went on to suggest the result of the PBT was "part of or built into the finding of reasonable grounds or a *prima facie* case, if you will, as alleged in the petition, and then in my opinion carried by the defendant on the first side of the case." While the court was discussing whether or not defendant carried his initial burden, the comment demonstrates the court had the opportunity to, and did, consider the reasonable grounds issue.  Thus, we find the State avoided forfeiture.

¶ 25        In the context of statutory summary suspension and probable cause, the Illinois Supreme Court stated, in relevant part, as follows:

> "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. [Citation.]  That is, the existence of probable cause depends upon the totality of the circumstances at the time of the arrest.

[Citations.] ' "In dealing with probable cause, *** we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." ' [Citations.]" *People v. Wear*, 229 Ill. 2d 545, 563-64, 893 N.E.2d 631, 642-43 (2008) (abrogated on other grounds by *Lange v. California*, 594 U.S. ___, 141 S. Ct. 2011 (2021)).

An officer must have more than a mere suspicion, but sufficient evidence for a conviction is not required. *People v. Quigley*, 2018 IL App (1st) 172560, ¶ 34, 122 N.E.3d 705. "Indeed, probable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *Wear*, 229 Ill. 2d at 564.

¶ 26　　　　We give deference to the trial court's findings of fact and reverse those findings only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187, 195 (2006). "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *Id.* "[T]he ultimate legal ruling regarding rescission is reviewed *de novo*." *People v. Gocmen*, 2018 IL 122388, ¶ 21, 115 N.E.3d 153.

¶ 27　　　　Here, the officer observed defendant drive the wrong direction on a one-way street. Although the trial court highlighted the fact that defendant committed no other traffic violations, we must examine the totality of the circumstances. Vanwynsburg testified defendant's eyes were red and he administered an abbreviated HGN test to defendant that indicated possible impairment. Vanwynsburg then asked defendant to exit his vehicle to perform field sobriety tests. According to Vanwynsburg, he administered an HGN test to defendant that

revealed four clues of impairment. Vanwynsburg later testified that he administered one portion of the test too slowly. Based on this testimony, the trial court completely discounted the results of the HGN test. However, at the time of arrest, Vanwynsburg believed the HGN test included four clues of impairment. We realize that at trial the HGN test results would likely not be admissible. However, in evaluating reasonable grounds, we look to the facts known to the officer at the time the arrest was made. *People v. Chapman*, 194 Ill. 2d 186, 217, 743 N.E.2d 48, 67 (2000). Thus, we decline to utilize hindsight to determine defendant should not have been subjected to the walk-and-turn-test. Also, there is no suggestion of misconduct or nefarious intent by the officer. The walk-and-turn test revealed four clues of impairment: defendant stepped off the line multiple times, stopped walking at one point, made an improper turn, and missed heel to toe. According to Vanwynsburg's testimony, only two clues on the walk-and-turn test indicated impairment. The trial court dismissed the unsuccessful completion of the walk-and-turn test because it was the only field sobriety test that indicated impairment. The court's dismissal of this evidence was against the manifest weight of the evidence where the walk-and-turn test revealed four indicators of impairment, twice as many clues as necessary to indicate impairment.

¶ 28        Our review of the record indicates that Vanwynsburg knew of eight total clues of impairment at the time he arrested defendant—four indicators from the HGN test and four from the walk-and-turn test. In addition, defendant admitted he drank wine 20 minutes before driving and vodka earlier in the day. Finally, when Vanwynsburg asked defendant to take the PBT, defendant said he would fail the test because he was impaired. Based on the totality of the circumstances and the facts known to the officer at the time of arrest, we conclude the officer had

reasonable grounds to believe defendant was under the influence of alcohol. Accordingly, we reverse the judgment of the trial court.

¶ 29                                    III. CONCLUSION

¶ 30          For the reasons stated, we reverse the trial court's judgment.

¶ 31          Reversed.

¶ 32          JUSTICE CAVANAGH, dissenting:

¶ 33          I respectfully disagree with the majority's analyses and conclusions as to (1) the State's forfeiture of any argument relative to whether there were reasonable grounds for the traffic stop and (2) the reversal of the trial court's ruling of no reasonable grounds for the DUI arrest.

¶ 34          As noted by the majority, the State's motion to reconsider was devoid of argument relative to reasonable grounds. Instead, the State argued the trial court incorrectly refused to consider the PBT result due to the absence of an adequate foundation. Likewise, the State's argument at the hearing on the motion to reconsider addressed the PBT admission. Specifically, the State's motion asked the court to "reconsider its previous ruling to allow the admission of the PBT results." During the hearing on the motion, the State twice asked the court to reconsider its ruling on the PBT.

¶ 35          Because a summary suspension hearing is a civil proceeding, we look to those standards relative to forfeiture. It is well-established that issues not raised before a trial court are forfeited on appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. This rule's purpose is to encourage litigants to raise issues before the trial court, and to ensure the lower court has an opportunity to remedy an error prior to appeal. *Id.* As well, its purpose is to prevent a party from obtaining a reversal through inaction. *Id.* Because the State

did not raise the reasonable grounds argument with the trial court in a timely manner in its motion to reconsider or at the argument thereon (other than the PBT issue), which would have provided the court with an opportunity to consider the question, I believe the State has forfeited the argument on appeal. See *id.* ¶ 15. And of course, the result would be the same pursuant to the standard in a criminal appeal. *Chapman*, 194 Ill. 2d at 225. I would hold the State has forfeited any argument relative to reasonable grounds.

¶ 36 Moving to the issue of whether there were reasonable grounds to believe defendant was under the influence of alcohol, it is notable the hearing occurred over a period of three nonconsecutive days, giving the State ample opportunity to marshal evidence to rebut defendant's *prima facie* case for rescission. Further, as the majority notes, the arresting officer testified defendant was cooperative, polite, and did not exhibit slurred speech or the smell of alcohol. The officer noted in addition that although defendant initially drove the wrong way down a one-way street, defendant immediately remedied that, obeyed the other traffic laws, and pulled over properly when directed to by the officer.

¶ 37 As to the field sobriety tests (FSTs or FST singular), the officer testified he first performed the HGN test on defendant, but erred in doing so because he spent a longer span of time than prescribed performing an integral part of the test. As well, the officer testified defendant displayed but two clues on the HGN test. The officer acknowledged at least four clues on the HGN test are necessary to constitute a failure and permit proceeding to another FST.

¶ 38 Nevertheless, the arresting officer next conducted the walk-and-turn test. This FST requires two clues to constitute a test failure. The officer noted four clues: stepping off the line multiple times, that defendant stopped walking at some point, an improper turn, and failing to touch heel to toe.

¶ 39 Finally, the officer conducted the one-leg-stand FST. This test requires two clues to fail, but the officer testified he noted one clue at the time of the stop.

¶ 40 The trial court determined it would not consider the HGN test as the officer administered the test incorrectly. Defendant passed the one-leg-stand test, leaving only his failure on the walk-and-turn. The court noted defendant had only briefly driven the wrong way on the one-way street, and had no other issues driving, though there were ample opportunities to demonstrate difficulties driving. Given the officer noted no odor of alcohol, no slurred speech, and that defendant had no trouble providing his driver's license or insurance, the court granted defendant's petition to rescind the statutory summary suspension.

¶ 41 For HGN test results to be admissible, the testing (1) must have been performed according to the protocol promulgated by the National Highway Traffic Safety Administration (NHTSA) and (2) conducted by a properly trained officer in accordance with those standards. *People v. McKown*, 236 Ill. 2d 278, 306 (2010). If the testing is properly administered by a trained officer, the trained officer may use the test result as part of the basis for the officer's conclusion a defendant is under the influence of alcohol and impaired. *Id.* Thus in *McKown*, the admission of the officer's testimony about the HGN testing of the defendant, which did not meet NHSTA standards, was reversible error. *Id.* at 293, 310-11, 314.

¶ 42 As acknowledged by the arresting officer, he did not perform the FSTs according to the appropriate standards. The officer first lingered too long during a portion of the HGN test. He subsequently proceeded to another FST, when there were only two clues on the HGN test— despite the protocol requiring four clues on the HGN test to proceed with another FST. Therefore, the first test result from the HGN test cannot be used to support a conclusion defendant was under the influence of alcohol. Further, as defendant passed the HGN test, the

officer should not have proceeded with further testing. However, when the officer did, defendant failed the walk-and-turn and passed the one-leg-stand. If the officer had administered the HGN test in accordance with appropriate training and standards, the testing would have terminated with defendant's successful completion of the HGN test.

¶ 43 Thus, the trial court properly rejected the results of the HGN test and could have declined to consider any additional testing. Further, the court was in a superior position to evaluate the evidence presented over three nonconsecutive days. Without repeating the factors the court considered as noted above, I would affirm and hold (1) the court correctly determined there were no reasonable grounds to arrest defendant for DUI, (2) that such conclusion is not against the manifest weight of the evidence, and (3) the court did not commit error by granting defendant's petition to rescind the statutory summary suspension.